# UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| INTELLECTUAL WELLNESS, LLC, | ) | |
| a Michigan Limited Liability Company | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| Megan Elizabeth Smith, | ) | JURY TRIAL DEMANDED |
| and Joshua B. Smith, | ) | |
| doing business as NRGX Labs. | ) | |
| | | |
| Defendants. | | |

_____/

Bator Gwinn PC
By: David G. Cain (P33265)
Attorney for Plaintiff
400 W. Maple Rd. Suite 200
Birmingham, MI 48009
(248) 642-8120

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff  INTELLECTUALWELLNESS, LLC,("Plaintiff") hereby alleges for its complaint against  MEGAN ELIZABETH SMITH, and JOSHUA B. SMITH, doing business as NRGX Labs ("Defendants"), on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows

## I.  THE PARTIES

1. Intellectual Wellness, LLC (hereinafter the "Plaintiff") is a Michigan Limited Liability Company with its principal place of business located in Livingston, Michigan.

2. Plaintiff is the Assignee of the following United States Patents:

    A. US Patent No. 8,084,446, entitled "Use of DHEA Derivatives for Enhancing Physical Performance" ("the '446 patent"); and

    B. US Patent No. 8,338,399 entitled "Use of DHEA Derivatives for Enhancing Physical Performance" ("the '399 patent")

3.  The above patents are herein referred to as the "Patents in Suit"

4.  Plaintiff owns the Patents in Suit, including the right to sue and recover damages for the infringement thereof.

5.  Defendant Megan Elizabeth Smith is an individual who resides in the state of Missouri, and Defendant Joshua B. Smith is an individual who resides in the state of Missouri, both who, on information and belief, are doing business as NRGX Labs ( hereinafter the "Defendants").

## II. JURISDICTION AND VENUE

6.  This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

7.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

8.  This Court has personal jurisdiction over Defendants.   By way of example and without limitation, Defendants, individually and doing business as NRGX Labs, directly or through intermediaries (including distributors, retailers, and others), formulate, make, manufacture, ship, distributes, advertise, market, offer for sale, and/or sell dietary supplement products that infringe on one or more claims of the Patents in Suit (hereinafter the "Infringing Products"), which include without limitation products sold under the "1,4 Andro MaXX  " and "19nor

Deca MaXX" brand names, in the United States, the State of Michigan, and the Eastern District of Michigan.

9.  By way of further example and without limitation, Defendants, individually and doing business as NRGX Labs, have purposefully and voluntarily placed the Infringing Products, into the stream of commerce with the knowledge,  understanding, and expectation that such Infringing Products will be purchased in the Eastern District of Michigan, and the products are actually purchased in the Eastern district of Michigan.

### III. <u>FACTUAL BACKGROUND</u>

10. On or about February 1, 2010, Defendant Megan E. Smith registered herself as the owner of the fictitious name of NRGX Labs with the State of Missouri.

11. According to NRGX Labs' website homepage, http://nrgxlabs.com/ , Defendant Joshua B. Smith is set forth as an owner of NRGX Labs.

12. Defendants, individually and doing business as NRGX Labs, operate a dietary supplement company which provides sports nutrition, weight loss, insulin management, joint relief, and pre- and post-workout supplements.

13. Defendants, individually and doing business as NRGX Labs, maintain a website at http://nrgxlabs.com/ to facilitate the sale and distribution of their products.

14. Defendants, individually and doing business as NRGX Labs, offer their dietary supplements, including the Infringing Products, nationwide, including within the Eastern District of Michigan, at retailers such as GNC, A1 Supplements, and My Supplement store.

15.  Defendants, individually and doing business as NRGX Labs, also sell their products at local Michigan retailers, including some who are located in the Eastern District of Michigan

16. On or about October 11, 2011, Plaintiff sent notice to Defendants of their infringement of Plaintiff's Patents in Suit via first class and certified mail letters to Megan E. Smith, as the registered user of the fictitious name NRGX Labs, and to NRGX Labs at its registered address.

## IV. THE DEFENDANTS INFRINGMENTS

17. Defendants, individually and doing business as NRGX Labs, have committed the tort of patent infringement within the State of Michigan, and more particularly, within the Eastern District of Michigan, in that Defendants, individually and doing business as NRGX Labs, have caused the Infringing Products to be formulated made, manufactured, shipped, distributed, advertised, offered for sale and/or sold in this District, and continue to do so.

18. The Infringing Products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale and sold by Defendants to include certain ingredients that, by virtue of their inclusion in the infringing Products, infringe one or more of the claims of one or more of the Patents in Suit.

## A.  DIRECT INFRINGMENTS

19. Defendants, individually and doing business as NRGX Labs, and/or their employees, agents, representatives, and/or other persons sponsored by or who endorse Defendants and Defendants' Infringing Products in advertising and marketing activities, have taken, used,

and orally administered the Infringing Products.

20. The infringing products are formulated, made, manufactured, shipped, distributed, advertised, offered for sale and sold by Defendants, individually and doing business as NRGX Labs, to include certain ingredients that, by virtue of their inclusion in the infringing Products, infringe one or more of the claims of one or more of the Patents in Suit.

21. The Infringing Products are and were formulated, made, manufactured, shipped, distributed, advertised, offered for sale and sold by Defendants, individually and doing business as NRGX Labs, to include certain ingredients that, by virtue of their inclusion in the Infringing Products, infringe and infringed one or more of the claims of one or more of the Patents in Suit, and as a result, when Defendants' employees, agents, representatives, and/or other persons sponsored by or who endorse Defendants and Defendants' Infringing Products in advertising and marketing activities orally administer and administered the Infringing Products, they are and were practicing and practiced the methods disclosed in those claims.

22. The purposes for which these ingredients are included in the Infringing Products are and were, without limitation to enhance physical performance.

23. Defendants, individually and doing business as NRGX Labs, encouraged and/or are aware of the fact that their employees, agents, representatives, and/or other persons sponsored by or who endorse Defendants and Defendants' Infringing Products in advertising and marketing activities Defendants and Defendants' Infringing Products in advertising and marketing activities orally administered and administer the Infringing products and practice and practiced the methods disclosed in one or more claim of the Patents in Suit, and these employees, agents, representatives, and/or other persons sponsored by or who endorse Defendants and Defendants' Infringing Products in advertising and marketing activities are

and were acting under Defendants, individually and doing business as NRGX Labs, direction and control when practicing these methods.

24. Therefore, Defendants, individually and doing business as NRGX Labs, are and were a direct infringer of one or more claims of one or more claims of the Patents in Suit.

## B.  INDIRECT INFRINGMENTS

25. End-users of Defendants, individually and doing business as NRGX Labs, Infringing Products were and also direct infringers of one or more claims of the Patents in Suit.

26. End-users of Defendants' Infringing Products have taken, used, and orally administered the Infringing Products.

27. The infringing products are and were formulated, made, manufactured, shipped, distributed, advertised, offered for sale and/or sold by Defendants, individually and doing business as NRGX Labs, to include certain ingredients that, by virtue of their inclusion in the Infringing Products, infringe and infringed one or more of the claims of one or more of the Patents in Suit, and as a result, when end-users of Defendants' Infringing Products orally administer and administered the Infringing Products, they are and were practicing and practiced the methods disclosed in those claims.

28. Defendants, individually and doing business as NRGX Labs, labels and advertising for the Infringing Products explain and explained the elements and essential elements of one or more of the methods disclosed in the Patents in Suit, and those labels and advertising statements encourage, urge, and induce the Infringing Products' end-users Defendants have therefore specifically intended to cause these end-users to directly infringe the claimed methods of the

Patents in Suit, and did so in the past, to purchase and orally ingest the products to practice those methods, and end-users do and did practice those methods.

29. Defendants, individually and doing business as NRGX Labs, have therefore specifically intended to cause these end-users to directly infringe the claimed methods of the Patents in Suit, and in fact urged them to do so.

30. The Infringing Products are and were not suitable for non-infringing uses, and none of Defendants, individually and doing business as NRGX Labs, labels or advertisements for their Infringing Products disclose or disclosed any uses for the products, nor for the compounds disclosed in the claimed methods of the Patents in Suit, that do not infringe these claimed methods.

31. The inclusion of the specific infringing compounds in the Infringing Products is and was material to practicing such methods.

32. Defendants, individually and doing business as NRGX Labs, have and had knowledge that the Infringing Products are and were especially adapted by end-users of the products for the practicing of such methods, and indeed, Defendants encouraged, urged, and induced, and still encourage, urge and induce the Infringing Products' end-users to purchase and orally administer the Infringing Products to practice such methods.

33. Defendants, individually and doing business as NRGX Labs, intentionally and knowingly induced encouraged, urged, and induced, and still encourage, urge and induce the Infringing Products' end-users to purchase and orally administer the Infringing Products for the purpose of practicing the claimed methods of the Patents in Suit, by having them orally ingest the compounds disclosed in such claims.

34. Defendants, individually and doing business as NRGX Labs, have and had knowledge of the

fact that the accused products, particularly as administered, infringe on one or more of the claims of the Patents in Suit.

35. Defendants, individually and doing business as NRGX Labs, have and had direct firsthand knowledge of the Patents in Suit.

36. By way of example and without further limitation Defendants, individually and doing business as NRGX Labs, received written notice of the Patents in suit in October, 2011.

37. Defendants, individually and doing business as NRGX Labs, willfully and knowingly decided to infringe the Patents in Suit despite knowledge of the patents' existence and their knowledge of the Infringing Products infringements of the claims of the Patents in Suit.

38. At a minimum, and in the alternative, Plaintiff pleads that the Defendants, individually and doing business as NRGX Labs, willfully blinded themselves to the infringing nature of the Infringing Products' sales.

39. Defendants, individually and doing business as NRGX Labs, did not cease their own direct infringement, nor their contributory infringement or inducement of infringement by end-users, despite their knowledge of the Patents in Suit and the end-users' infringing activities with respect to the Patents in Suit.

## V. COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,084,446

40. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

41. Defendants, individually and doing business as NRGX Labs, have, and continue to do so, literally and directly infringed, or directly infringed under the doctrine of equivalents one or

more claims of United States Patent No. 8,084, 446 (hereinafter, "the '446 Patent") by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Infringing Products, or any one of those products.

42. In addition to the fact Defendants, individually and doing business as NRGX Labs, make, use, sell, and/or offer for sale the Infringing Products, and did so in the past, further examples of Defendants direct infringements include, without limitation, the fact that Defendants encouraged and/or were aware that their employees, agents, representatives, and/or other persons sponsored by or who endorse Defendants, individually and doing business as NRGX Labs, and Defendants' Infringing Products in advertising and marketing activities orally administered the Infringing Products, and practiced and continue to practice the methods disclosed in one or more claim of the '446 Patent and these employees, agents, representatives, and/or other persons sponsored by or who endorse Defendants, individually and doing business as NRGX Labs, and Defendants' Infringing Products in advertising and marketing activities were acting under Defendants direction and control when practicing these methods.

43. Defendants, individually and doing business as NRGX Labs, encouraged and were aware of these persons' oral administration of the Infringing Products for these purposes, these persons were acting under Defendants direction and control, and therefore Defendants directly practiced the methods and/or claims of the '446 Patent.

44. End-users of Defendants, individually and doing business as NRGX Labs, Infringing Products were also direct infringers of one or more claims of the '446 Patent.

45. End-users of Defendants, individually and doing business as NRGX Labs, Infringing Products have taken, used, and orally administered the Infringing Products.

46. The Infringing Products were formulated, made, manufactured, shipped, distributed, advertised, market, offered for sale, and sold by Defendants, individually and doing business as NRGX Labs, to include certain ingredients that, by virtue of their inclusion in the Infringing products, infringed one or more of the claims of the '446 Patent.

47. The Infringing Products were formulated, made, manufactured, shipped, distributed, advertised, marketed, offered for sale, and sold by Defendants, individually and doing business as NRGX Labs, to include certain ingredients that, by virtue of their inclusion in the Infringing products, infringed one or more of the claims of the '446 Patent, and as a result when end-users of Defendants Infringing Products orally administered the Infringing Products they were practicing the methods disclosed in one or more claims of that patent.

48. Defendants, individually and doing business as NRGX Labs, labels and advertising for the Infringing Products explain and explained the elements and essential elements of one or more of the methods disclosed in the '446, and those labels and advertising statements encouraged, urged, and induced, and continue to do so, the Infringing Products' end-users to purchase and orally ingest the products to practice those methods, and end-users did and continue to practice those methods.

49. Defendants, individually and doing business as NRGX Labs, therefore specifically intended to cause these end-users to directly infringe the claimed methods of the '446 Patent, and had and continue to urge them to do so.

50. The Infringing Products are, and were not at any time, suitable for non-infringing uses, and none of Defendants labels or advertisements for the Infringing Products disclosed any uses for the products, nor for the compounds disclosed in the claimed methods, that did not infringe upon such methods.

51. Defendants, individually and doing business as NRGX Labs, have and had knowledge that the Infringing Products were especially adapted by end-users of the products for the practicing of such methods, and indeed, Defendants encouraged, urged, and induced, and still encourage, urge and induce the Infringing Products' end-users to purchase and orally administer the Infringing Products to practice such methods.

52. Defendants, individually and doing business as NRGX Labs, intentionally and knowingly induced encouraged, urged, and induced, and still encourage, urge and induce the Infringing Products' end-users to purchase and orally administer the Infringing Products for the purpose of practicing the claimed methods of the '446 Patent, by having them orally ingest the compounds disclosed in such claims.

53. Defendants, individually and doing business as NRGX Labs, had knowledge of the fact that the Infringing Products, particularly as administered, infringed on one or more claims of the '446 Patent.

54. Defendants, individually and doing business as NRGX Labs, had direct, firsthand knowledge of the '446 Patent itself.

55. Defendants', individually and doing business as NRGX Labs, activities were without express or implied license by Plaintiff.

56. Defendants, individually and doing business as NRGX Labs, have profited though their infringement of the '446 patent, and continue to do so,

57. As a result of Defendants, individually and doing business as NRGX Labs, acts of infringement, Plaintiff suffered, and will continue to suffer damages in an amount to be proved at trial.

58. Defendants, individually and doing business as NRGX Labs, intend to continue their acts of

infringements, and Plaintiff has, and will continue to, suffer irreparable harm, for which there is no adequate remedy at law unless Defendants, individually and doing business as NRGX Labs, are enjoined by this Court from continuing such acts of infringement.

59. Defendants individually and doing business as NRGX Labs, past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants and award of treble damages and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285.


## VI. COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 8,338,399

60. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

61. Defendants, individually and doing business as NRGX Labs, have, and continue to do so, literally and directly infringed, or directly infringed under the doctrine of equivalents one or more claims of United States Patent No. 8,338,399 (hereinafter, "the '339 Patent") by making, using, offering to sell, and/or selling in the United States, and/or importing into the United States the Infringing Products, or any one of those products.

62. In addition to the fact Defendants individually and doing business as NRGX Labs, make, use, sell, and offer for sale the Infringing Products, and did so in the past, further examples of Defendants, individually and doing business as NRGX Labs, direct infringements include, without limitation, the fact that Defendants encouraged and/or are aware that their employees, agents, representatives, and/or other persons sponsored by or who endorse Defendants and Defendants' Infringing Products in advertising and marketing activities

orally administered the Infringing Products, and practiced and continue to practice the methods disclosed in one or more claim of the '339 Patent, and these employees, agents, representatives, and/or other persons sponsored by or who endorse Defendants, individually and doing business as NRGX Labs, and Defendants' Infringing Products in advertising and marketing activities were acting under Defendants direction and control when practicing these methods.

63. Defendants, individually and doing business as NRGX Labs, encouraged and were aware of these persons' oral administration of the Infringing Products for these purposes, these persons were acting under Defendants direction and control, and therefore Defendants directly practiced the methods and/or claims of the '339 Patent.

64. End-users of Defendants, individually and doing business as NRGX Labs, Infringing Products were also direct infringers of one or more claims of the '339 Patent.

65. End-users of Defendants, individually and doing business as NRGX Labs, Infringing Products have taken, used, and orally administered the Infringing Products.

66. The Infringing Products were formulated, made, manufactured, shipped, distributed, advertised, market, offered for sale, and sold  by Defendants, individually and doing business as NRGX Labs, to include certain ingredients that, by virtue of their inclusion in the Infringing products, infringed one or more of the claims of the '339 Patent.

67.  The Infringing Products were formulated, made, manufactured, shipped, distributed, advertised, market, offered for sale, and sold by Defendants, individually and doing business as NRGX Labs, to include certain ingredients that, by virtue of their inclusion in the Infringing products, infringed one or more of the claims of the '339 Patent, and as a result when end-users of Defendants Infringing Products orally administered the Infringing

Products they were practicing the methods disclosed in one or more claims of that patent.

68. Defendants', individually and doing business as NRGX Labs, labels and advertising for the Infringing Products explain and explained the elements and essential elements of one or more of the methods disclosed in the '339, and those labels and advertising statements encouraged, urged, and induced, and continue to do so, the Infringing Products' end-users to purchase and orally ingest the products to practice those methods, and end-users did and continue to practice those methods.

69. Defendants, individually and doing business as NRGX Labs, therefore specifically intended to cause these end-users to directly infringe the claimed methods of the '339 Patent, and had and continue to urge them to do so.

70. The Infringing Products are, and were not at any time, suitable for non-infringing uses, and none of Defendants, individually and doing business as NRGX Labs, labels or advertisements for the Infringing Products disclosed any uses for the products, nor for the compounds disclosed in the claimed methods, that did not infringe upon such methods.

71. Defendants, individually and doing business as NRGX Labs, have and had knowledge that the Infringing Products were especially adapted by end-users of the products for the practicing of such methods, and indeed, Defendants encouraged, urged, and induced, and still encourage, urge and induce the Infringing Products' end-users to purchase and orally administer the Infringing Products to practice such methods.

72. Defendants, individually and doing business as NRGX Labs, intentionally and knowingly induced encouraged, urged, and induced, and still encourage, urge and induce the Infringing Products' end-users to purchase and orally administer the Infringing Products for the purpose of practicing the claimed methods of the '339 Patent, by having them orally ingest the

compounds disclosed in such claims.

73. Defendants, individually and doing business as NRGX Labs, had knowledge of the fact that the Infringing Products, particularly as administered, infringed on one or more claims of the '339 Patent.

74. Defendants, individually and doing business as NRGX Labs, had direct, firsthand knowledge of the '339 Patent itself.

75. Defendants, individually and doing business as NRGX Labs', activities were without express or implied license by Plaintiff.

76. Defendants, individually and doing business as NRGX Labs have, and continue to do so, profited though their infringement of the '339 patent.

77. As a result of Defendants, individually and doing business as NRGX Labs, acts of infringement, Plaintiff suffered, and will continue to suffer damages in an amount to be proved at trial.

78. Defendants, individually and doing business as NRGX Labs, intend to continue their acts of infringements, and Plaintiff has, and will continue to, suffer irreparable harm, for which there is no adequate remedy at law unless Defendants are enjoined by this Court from continuing such acts of infringement.

79. Defendants, individually and doing business as NRGX Labs, past infringements and/or continuing infringements have been deliberate and willful, and this case is therefore an exceptional case, which warrants damages and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285.

# VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for relief as follows:

1.      For a declaration that Defendants, individually and doing business as NRGX Labs, have infringed the Patents in Suit and /or induced others to infringe one or more claims of the Patents in Suit, under of 35 U.S.C. §§ 271 *et seq.;*

2.      For a declaration that Defendants, individually and doing business as NRGX Labs, infringement and/or inducement to infringe the Patents in Suit has been willful and deliberate;

3.      That Defendants, individually and doing business as NRGX Labs, be required to provide Plaintiff an accounting of all gains, profits, and advantages derived by Defendants infringements of the Patents in Suit.

4.      That Plaintiff be awarded compensatory damages, together with interest and costs, adequate to compensate Plaintiff for the wrongful infringing acts by Defendants, individually and doing business as NRGX Labs, in accordance with 35 U.S.C. § 284;

5.      That Plaintiff be awarded treble damages and pre-judgment interest under 35 U.S.C. § 284 with regard to the Patents in Suit in light of Defendants, individually and doing business as NRGX Labs, willful and deliberate infringement, in accordance with 35 U.S.C. § 284;

6.      That this case be declared exceptional in favor of Plaintiff under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action pursuant to 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil Procedure.

7.      For an order granting both preliminary and permanent injunctions pursuant to 35 U.S.C. § 283, enjoining the Defendants, individually and doing business as NRGX Labs, from further acts

of infringement;

8.      That Plaintiff be awarded Punitive Damages; and

9.      That Plaintiff be awarded such other relief as this Court may deem just and proper.

## VIII. <u>DEMAND FOR JURY TRIAL</u>

80. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a

trial by jury of all claims and issues so triable.

Dated: February 4, 2014

/s/ David G. Cain_____
BATOR GWINN PC
By: David Cain (P33265)
400 West Maple Road Suite 200
Birmingham, Michigan 48009
Phone: (248) 642-8120
Fax: (248) 642-5922
Email: dgcain1955@sbcglobal.net